**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**FRANCISCO ROMERO,**

    **Petitioner,**

    **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

    **Respondent.**

    **Case No. 2:16-cv-00600
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson**

## ORDER AND REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Motion to Dismiss, Petitioner's Response in Opposition, Respondent's Reply, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's Motion to Dismiss (Doc. 8) be **GRANTED**, and that this action be **DISMISSED.** In addition, Petitioner's motion to strike the Motion to Dismiss (Doc. 9) is **DENIED.**

## FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was indicted on three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), arising from his alleged sexual conduct with an 11–year–old girl, K.S. The crimes were charged as third-degree felonies because they involved a victim less than 13 years of age. R.C. 2907.05(C)(2).
>
> Following a trial, a jury returned guilty verdicts on Counts 1 and 3 and a not guilty verdict on Count 2. Thereafter, the trial court issued a judgment entry consistent with the jury's verdicts, classified appellant a Tier II Sex Offender, and sentenced him to 36 months imprisonment and 5 years of post-release control.

Appellant appeals the judgment, asserting the following three assignments of error:

1. The trial court erred when it permitted multiple witnesses to recount the victim's out-of-court statements about the event over hearsay objection from defense counsel.

2. The trial court erred when it allowed the State to elicit victim-impact evidence during the trial.

3. The cumulative impact of the trial court's errors warrants reversal.

Evidence presented by the parties pertinent to the issues raised in this appeal establishes the following. K.S., the 11–year–old daughter of D.S., was best friends with A.R., the nine-year-old daughter of M.R. and appellant, and the two girls often had sleepovers at each other's houses.

Although M.R. and appellant were divorced, appellant often visited A.R. at M.R.'s house. K.S. had a good relationship with appellant and M.R., and thought of them as her second parents.

On Saturday, April 13, 2013, K.S. spent the night with A.R. at M.R.'s house. Because M.R. had to work that evening, she arranged for a friend to babysit the girls. K.S. testified that she and A.R. were playing with their dolls while they took a bath together. Appellant knocked on the bathroom door and told the girls it was time to get out of the bathtub. K.S. wrapped a towel around her body and walked across the hall to A.R.'s room to get dressed. A.R. remained in the bathroom to drain the bathtub and dry off the dolls. Appellant followed K.S. into A.R.'s bedroom and gave K.S. "a friendly side hug." (Tr. Vol. II, 134.) As he did so, he squeezed her right breast. Appellant then pinched her on the bottom over the towel, lifted the towel and slapped her on the bottom, pulled out his cell phone, motioned for her to take off her towel, and then said, "[d]on't worry. I won't tell nobody." (Tr. Vol. II, 135.) K.S. covered her face with her sleepover bag and saw a cell phone camera flash. Appellant then left A.R.'s room, stopped briefly in the bathroom to say goodbye to A.R., and left the house. Moments later, A.R. entered the bedroom. K.S. immediately told A.R. what appellant had done to her. Shortly thereafter, K.S. received several text messages from appellant making fun of her boyfriend. K.S. did not tell the babysitter what had happened with appellant because she did not know her very well. Although she knew she

2

would have to tell her parents about the incident the next day, she tried to forget about it and enjoy the rest of the sleepover.

K.S. went home about 9:00 a.m. the next morning. At approximately 5:00 p.m. that evening, she told D.S. she needed to tell her something about appellant. According to D.S., K.S. related that she and A.R. were in the bathroom taking a bath around 9:00 p.m. the preceding night. K.S. did not take her pajamas into the bathroom with her; instead, she planned to put her pajamas on in A.R.'s bedroom. K.S. got out of the bathtub, wrapped herself *503 in a towel, and opened the bathroom door. Appellant followed her into A.R.'s bedroom and, when he reached toward her to give her a hug, he grabbed her right breast, patted or pinched her bottom over the towel, and then flipped the towel up and slapped her on the bare bottom. Appellant then motioned for K.S. to drop her towel, pulled out his cell phone, and told her "[d]on't worry. I won't tell anybody." (Tr. Vol. II, 69.)

After K.S. finished her story, D.S. immediately called the Reynoldsburg Police Department. At police urging, she drove K.S. to the police station, where Officer Craig Brafford interviewed K.S.

Officer Brafford testified that K.S. averred she and A.R. were playing with the dolls in the bathtub at A.R.'s house the preceding night. At some point, appellant knocked on the bathroom door and told the girls to hurry up and get out of the bathtub. K.S. wrapped herself in a towel and ran across the hall to A.R.'s bedroom to put on her pajamas. A.R. remained in the bathroom to dry off the dolls. A short time later, while K.S. was still in A.R.'s bedroom, appellant entered the bedroom, approached K.S. from behind, and gave her a hug. As he hugged K.S., appellant pinched her right breast, patted her on the buttocks, and then patted her on the bare buttocks. He then held up his cell phone as if to take a picture with it and motioned for K.S. to drop her towel. K.S. did not drop her towel, and held a straw beach bag in front of her face. K.S. then saw a flash she assumed to have come from appellant's cell phone. Appellant left the bedroom as A.R. entered. K.S. immediately told A.R. what appellant had done.

Detective Michael Binder also interviewed K.S. According to Detective Binder, K.S. asserted she was at A.R.'s house for a sleepover the preceding night. M.R. had to leave the house to go to work, so another woman came to babysit the girls. K.S. and A.R. played with their dolls in the bathtub for about 45 minutes. Appellant knocked on the bathroom door and told the girls it was

time to get out of the bathtub. A.R. stayed in the bathroom to dry off her dolls. K.S. wrapped herself in a towel and walked across the hall to A.R.'s bedroom to get dressed. Appellant followed her into A.R.'s room, squeezed her breast and pinched her buttocks over the towel, and then lifted the towel and slapped her bare buttocks. Appellant then motioned for K.S. to drop her towel, held up a cell phone as though he were going to take a picture of her, and said he "won't tell nobody." (Tr. Vol. III, 304.) K.S. thought appellant took a picture of her wearing the towel. Appellant eventually left the house, but later sent K.S. several text messages making fun of her boyfriend.

Officer Brafford subsequently obtained a description of appellant's vehicle and eventually stopped him for committing a traffic violation. At Officer Brafford's request, appellant removed his cell phone and other miscellaneous items from his pockets. Detective Binder arrived at the scene, retrieved appellant's cell phone from Officer Brafford, and informed appellant that he was the subject of certain allegations regarding his conduct the night before. Appellant agreed to go to the police station for an interview with Detective Binder.

During that interview, which was video recorded and played for the jury, appellant admitted he was at M.R.'s house the night before and told A.R. and K.S. to get out of the bathtub. According to appellant, both girls exited the bathroom at the same time wearing towels and then went into A.R.'s room across the hall. Appellant initially stated that nothing happened between him and K.S.; the two did *504 not even speak to one another. However, after further questioning, appellant stated that he touched K.S. on the small of her back as she entered A.R.'s bedroom.

When Detective Binder told appellant he had evidence that appellant had sexual contact with K.S., appellant adamantly denied doing so. Appellant admitted that he pretended to take a picture of K.S. while she was wearing the towel, but stated that he did not actually take a picture. Appellant also admitted he later sent text messages to K.S. about her boyfriend. Near the end of the interview, appellant denied touching K.S. on the buttocks over her towel, but stated that if he had done so, it was accidental and he was sorry about it. Appellant insisted he did not hug K.S. or touch her breast or bare buttocks. Following the interview, appellant agreed to return to the police station the next day for an interview with Detective Tim Doersam.

4

In that interview, which was also video recorded and played for the jury, appellant initially stated he touched K.S. on the small of her back as he was guiding her and A.R. toward A.R.'s bedroom after the girls exited the bathroom. He denied following K.S. into A.R.'s bedroom, giving her a hug, or touching her on the buttocks, either over or under the towel. He admitted he pretended to take a picture of K.S. while she was wearing the towel, but stated he never intended to take a picture and did not do so. Later during the interview, appellant stated that he may have accidentally tapped K.S.'s bare buttocks when he steered K.S. and A.R. into A.R.'s bedroom. He also conceded he walked into A.R.'s room, gave K.S. a side hug, and probably touched K.S.'s breast accidentally while doing so. He further stated he apologized to K.S. for touching her breast. Appellant consistently denied motioning to K.S. to drop her towel, telling her not to worry because he would not tell anyone about him taking a picture, or intentionally touching K.S.'s breast or buttocks.

Detective Binder obtained a search warrant for appellant's cell phone and enlisted another detective to perform a forensic analysis of the phone. That forensic analysis ultimately revealed no photograph of K.S.

At trial, A.R. testified that on the night in question, appellant and his friend, J.V., stopped by the house to drop off some model rockets. At the time, she and K.S. were playing with dolls in the bathtub. Appellant knocked on the bathroom door and told the girls to get out of the bathtub. Both girls wrapped themselves in towels; K.S. walked across the hall to A.R.'s bedroom while A.R. remained in the bathroom to clean up the dolls and drain the bathtub. When A.R. exited the bathroom, appellant was standing in the hallway outside the bathroom. Appellant hugged and kissed A.R. and left. After appellant left, A.R. went into her bedroom, where she spoke to K.S. According to A.R., K.S. "was sort of shocked and upset" and said appellant had "touched her" on her breast and her bottom. (Tr. Vol. II, 229.)

Appellant testified on his own behalf. According to appellant, when he and his friend, J.V., arrived at M.R.'s house, he put two model rockets on the kitchen table. K.S. and A.R. were in the bathroom taking a bath. At the babysitter's request, he told the girls to get out of the bathtub. A.R. exited the bathroom, and appellant took her into the kitchen to show her the rockets. A.R. then returned to the bathroom while appellant waited outside in the hallway. Appellant knocked on the bathroom door again and told the girls to get out of the bathtub. K.S. exited first; A.R. walked

5

behind appellant and gave him a hug. Because both girls were wearing only towels, appellant hurried *505 them across the hall into A.R.'s bedroom so J.V. would not see them. In doing so, appellant touched K.S.'s lower back over the towel; he did not touch her under the towel. A.R. said she left one of her toys in the bathroom and went back to retrieve it. Appellant remained in the hallway; A.R. eventually exited the bathroom, went into her bedroom, and closed the door. Appellant and J.V. then left. Appellant denied entering the bedroom with K.S. or taking a picture of K.S. with his cell phone.

Appellant returned to M.R.'s house the next day. After he left that evening, he was stopped by a patrol officer and told a detective wanted to question him about his conduct the previous night. He voluntarily drove to the police station, where Detective Binder informed him K.S. had alleged he touched her inappropriately. Appellant agreed to an interview, and he told Detective Binder his version of the events. Appellant testified he was "scared" during the interview, but attempted to truthfully answer the detective's questions. (Tr. Vol. IV, 637.)

Appellant averred that despite Detective Binder's repeated insistence that appellant took a cell phone picture of K.S. and touched K.S.'s breast and bare buttocks, appellant consistently denied doing so. However, appellant ultimately told Detective Binder that if he did touch K.S.'s breast and buttocks while he was ushering her into A.R.'s bedroom, it was accidental and he was sorry about it. He testified he made these statements only after being "badgered and badgered" by the detective. (Tr. Vol. IV, 645.)

Appellant further testified he returned to the police station for a second interview on April 15, 2013, during which Detective Doersam repeatedly asked him if he touched K.S.'s breast or bare buttocks. Initially, appellant denied doing so; however, because the detective was "pushing and pushing and pushing" and appellant was "scared" and "under a lot of pressure," he ultimately stated that if he did touch K.S.'s breast or bare buttocks, he was sorry for doing so. (Tr. Vol. IV, 653–54.)

Appellant acknowledged sending K.S. several text messages about her boyfriend after he left M.R.'s house on April 13, 2013. He also testified he was "absolutely certain" that even if he did touch K.S. on the breast or buttocks, either over or under the towel, he did not do so for the purpose of sexual gratification. (Tr. Vol. V, 693.)

*State v. F.R.*, 34 N.E.3d 498, 502–05 (Ohio Ct. App. 2015) (paragraph symbols omitted).

On May 19, 2015, the state appellate court affirmed the judgment of the trial court, *id.*, and the Ohio Supreme Court declined to accept jurisdiction of the appeal on September 30, 2015. *State v. F.R.*, 38 N.E.3d 901 (Ohio 2015). On June 24, 2016, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence; and that he was improperly convicted based on inadmissible hearsay, victim-impact testimony, and cumulative error. Respondent's position is that Petitioner's claims fail to provide a basis for federal habeas corpus relief or are waived. (Doc. 8). In addition, Petitioner requests Respondent's Motion to Dismiss be stricken. (Doc. 9).

## DISCUSSION

### I. MOTION TO STRIKE (Doc. 9)

As a threshold matter, Petitioner requests that Respondent's Motion to Dismiss be stricken as untimely, non-responsive, or for failing to comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (*See generally* Doc. 9). However, the Motion to Dismiss was filed timely. The Court granted Respondent's request for an extension of time until October 5, 2016, to file a response to the Petition, and Respondent filed the Motion to Dismiss that same date. Further, the filing of a Motion to Dismiss on the basis that Petitioner's claims fail to provide a basis for relief or are procedurally defaulted complies with Rules 4 and 5 of the Rules Governing § 2254 Cases, which specifically contemplate the filing of an answer, a motion to dismiss, or some other response, and require the Respondent to indicate whether any claim in the petition is barred by a failure to exhaust state

remedies, a procedural bar, non-retroactivity, or a statute of limitations.  Accordingly, Petitioner's Motion to Strike (Doc. 9) is **DENIED**.

## II.      MOTION TO DISMISS (Doc. 8)

Although Petitioner lists only one ground for relief, he asserts several alleged errors in his Petition.  (Doc. 5).  He asserts that he was improperly convicted based on inadmissible hearsay, victim-impact testimony, and cumulative error; and that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence.  Respondent has moved to dismiss the entire Petition.  (Doc. 8).

### A.  Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the familiar standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case.  The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*,--U.S.--, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted)).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under AEDPA, the factual findings of the state court are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)).  The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49.  The burden of satisfying AEDPA's standards rests with Petitioner.

*See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

### B.  Analysis of Petitioner's Ground for Relief

As noted, Petitioner presents one ground for relief with multiple parts.  (Doc. 5 at 7; *see also* Doc. 15 at 2).

### 1.  State Evidentiary Rulings

Petitioner first asserts that the trial court improperly admitted hearsay and victim-impact testimony.  The state appellate court considered and rejected this claim, including Petitioner's Confrontation Clause claim:

> [A]ppellant contends the trial court erred in admitting hearsay testimony from D.S., Officer Brafford, and A.R. relating what K.S. told them about appellant's sexual misconduct. Appellant argues this testimony violated both the Ohio Rules of Evidence and his constitutional rights under the Sixth Amendment to the United States Constitution to confront the witnesses presented against him at trial.
>
> A trial court has broad discretion in the admission of evidence and its evidentiary rulings in this regard will not be reversed absent an abuse of that discretion. *State v. Jordan*, 10th Dist. No. 06AP–96, 2006-Ohio-6224, 2006 WL 3411420, ¶ 19. "The term 'abuse of discretion' connotes more than a mere error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
>
> The Ohio Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Thus, "[t]o be hearsay, testimony must meet a two-prong test: it must concern an out-of-court statement, and it must be offered to prove the truth of the matter asserted. * * * If either element is not present, the statement is not hearsay." *State v. Menefee*, 10th Dist. No. 95APA03–266, 1995 WL 571428 (Sept. 29, 1995), citing *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984). "Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the

rules of evidence." *State v. L.E.F.*, 10th Dist. No. 13AP–1042, 2014-Ohio-4585, 2014 WL 5306840, ¶ 5.

Appellant contends the testimony of D.S., Officer Brafford and A.R. "fall[s] squarely with the definition of hearsay," and that no relevant exception applies. (Appellant's Brief, 11.) Appellant specifically argues none of the testimony is "justified as being offered to explain a mother['s] or officer's or friend's actions following the statement." (Appellant's Brief, 11.) Appellant maintains "the only reason to introduce [K.S.]'s substantive statement was to bolster her credibility and prove that her version of events is what did, in fact, occur." (Appellant's Brief, 11.) Accordingly, argues appellant, the testimony should have been excluded. Appellant further contends the remaining evidence offered in support of appellant's conviction was not so overwhelming as to render harmless the trial court's failure to exclude the challenged testimony.

We first address D.S.'s testimony recounting what K.S. said about appellant's sexual misconduct. At trial, appellant raised only a general hearsay objection to D.S.'s testimony, and the trial court overruled the objection without explaining its basis for doing so.

The state asserts D.S.'s testimony was not hearsay because it was not offered to prove the truth of the matter asserted, that is, to show appellant engaged in sexual conduct with K.S. Rather, argues the state, D.S.'s testimony was offered only to explain her subsequent actions in contacting the police.

"Out-of-court statements offered for reasons other than the truth are not hearsay." *State v. Willis*, 8th Dist. No. 97077, 2012-Ohio-2623, 2012 WL 2150334, ¶ 11, citing *State v. Freeman*, 8th Dist. No. 85137, 2005-Ohio-3480, 2005 WL 1581105, ¶ 40, citing *State v. Lewis*, 22 Ohio St.2d 125, 132–33, 258 N.E.2d 445 (1970). For example, "[b]ecause testimony offered to explain a witness' actions is not offered to prove the truth of the matter asserted, such testimony is not hearsay." *Menefee,* citing *State v. Congeni*, 3 Ohio App.3d 392, 398, 445 N.E.2d 698 (8th Dist.1981). " '[E]xtrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.' " *Id.*, quoting *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

D.S.'s testimony was not offered solely to explain how she proceeded with the information provided by K.S. Her testimony exceeded that which was necessary to establish a foundation for

her subsequent conduct in contacting the police. To establish such a foundation, D.S. needed only to aver that K.S. reported that appellant had done something of a sexual nature to K.S. that upset or disturbed her. Instead, D.S. provided a detailed recitation of K.S.'s statements which included the elements of the crime of gross sexual imposition, that is, that appellant touched K.S.'s breast and buttocks. Accordingly, we do not agree with the state's argument that D.S.'s testimony was not hearsay.

However, we do agree with the state's alternative contention that even if D.S.'s testimony did constitute hearsay, it was admissible as an excited utterance pursuant to Evid.R. 803(2). The excited utterance exception allows for the admission of hearsay testimony if (1) the declarant's statement relates to a startling event or condition, and (2) the declarant makes the statement while under the stress or excitement caused by the event or condition. Evid.R. 803(2). "The excited utterance exception to the hearsay rule exists because excited utterances are the product of reactive rather than reflective thinking and, thus, are believed inherently reliable." *State v. Ducey,* 10th Dist. No. 03AP–944, 2004-Ohio-3833, 2004 WL 1607310, ¶ 17, citing *State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993).

A declarant's statement need not be made within a certain time after the startling event in order to qualify as an excited utterance. *Id*. at ¶ 22, citing *Taylor* at 303, 612 N.E.2d 316. " 'There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore, the passage of time between the statement and the event is relevant but not dispositive of the question.' " (Emphasis sic.) *Id*., quoting *Taylor* at 303, 612 N.E.2d 316. " 'Relevant factors in ascertaining whether the declarant was in a sufficient state of excitement or stress include outward indicia of emotional state such as tone of voice, accompanying actions, and general demeanor.' " *Ducey* at ¶ 22, quoting *Osborne v. Kroger Co.,* 10th Dist. No. 02AP–1422, 2003-Ohio-4368, 2003 WL 21962585, ¶ 46.

In *State v. Fox*, 66 Ohio App.3d 481, 585 N.E.2d 561 (6th Dist.1990), an eight-year-old victim of sexual abuse reported the abuse to a social worker one day after the abuse occurred. The trial court admitted the social worker's trial testimony relating the child's statements under the excited utterance exception to the hearsay rule. On appeal, the defendant argued the child's

12

statements could not be termed excited utterances because of the one-day time lapse between the startling event (the abuse) and the out-of-court declaration (the reporting of the abuse to the social worker). The appellate court concurred in the admission of the testimony, stating, at 489:

"Lapse of time between the startling event and the out-of-court statement is not dispositive in the application of Evid.R. 803(2). Rather, the question is whether the declarant is still under the stress of nervous excitement from the event." *State v. Boston* (1989), 46 Ohio St.3d 108, 118, 545 N.E.2d 1220, 1230–1231, citing *State v. Duncan* (1978), 53 Ohio St.2d 215, 219–222, 7 O.O.3d 380, 382–384, 373 N.E.2d 1234, 1236–1238. * * * As applied to the statements of child declarants who have been sexually assaulted, the admissibility of these statements depends upon the unique circumstances of each case. The focus is not on a specific time frame but upon whether the excitement of the assault is still dominant over the child declarant's thought processes and whether the child's statements were unreflective expressions of her belief.

The record of the case before us reveals that approximately one day lapsed between the alleged sexual assault on August 2, 1988, and [the child's] interview with [the social worker]. The incident itself was of a shocking nature, and the child was described as distraught and tearful during this portion of the interview. Taking these facts into consideration, it is reasonable to find that [the child] was still in a state of excitement at the time of her statement to [the social worker].

The court in *State v. Mader*, 8th Dist. No. 78200, 2001 WL 1002365 (Aug. 30, 2001), held similarly. There, a 13–year–old victim of sexual abuse reported the abuse to her mother, her school counselor, and the police two to three days after the abuse occurred. The trial court admitted the testimony of these witnesses under the excited utterance exception to the hearsay rule. The appellate court concluded it was within the trial court's discretion to find the child was still under the stress of the event when she made the statements to the adults. In so concluding, the court observed, "[a] child is likely to remain in a state of nervous excitement longer than an adult. * * * A child also has less ability to reflect upon events, so their statements are less likely to be the result of reflective thought. * * * A child could still be under the stress of the incident days or weeks after the event." *Id.*, citing the dissent in *State v. Kebe*, 8th Dist. No. 73398, 1998 WL 787393 (Nov. 12, 1998). The court also noted the child was "hysterical and crying" when she reported the abuse and was only 13 years old at

the time of the incident. *Id. See also State v. Wright*, 6th Dist. No. L–12–1327, 2013-Ohio-5910, 2013 WL 7123157, ¶ 18 (test for excited utterance applied liberally to out-of-court statements made by child declarants alleged to have been sexually assaulted).

In the present case, K.S. reported appellant's sexual misconduct to D.S. less than 24 hours after it occurred and less than 8 hours after she returned home. D.S. testified K.S. had an "apprehensi[ve] * * * upsetting, anxious tone in [her] voice" when reporting the incident. (Tr. Vol. II, 66.) D.S. testified she was not surprised K.S. waited until the next evening to tell her what had happened. According to D.S., K.S. said "she tried to tell me twice, and she thought she was going to throw up. She was upset about it. She was not in the wrong. But the thought of it made her sick." (Tr. Vol. II, 70.) Further, K.S. was only 11 years old at the time of the incident. In accordance with *Fox* and *Mader,* we conclude K.S.'s statements to D.S. qualified as an excited utterance because the statements related to the startling event of being sexually assaulted by appellant and were made while K.S. was still under the stress of that event. Accordingly, the trial court did not err in admitting D.S.'s testimony.

We next address Officer Brafford's testimony relating K.S.'s statements about appellant's inappropriate sexual conduct. Appellant again raised only a general hearsay objection to the testimony, and the trial court again summarily overruled the objection.

The state asserts Officer Brafford's testimony did not constitute hearsay because it was not offered to prove the truth of the matter asserted, that is, to show the sexual conduct occurred. Rather, argues the state, K.S.'s statements to Officer Brafford were offered only to explain his subsequent conduct in investigating the crime.

Generally, a police officer is permitted to testify as to the underlying reasons for his conduct in investigating a crime, and such statements are, by definition, not hearsay. *State v. Blanton*, 184 Ohio App.3d 611, 2009-Ohio-5334, 921 N.E.2d 1103, ¶ 38 (10th Dist.), citing *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist. 1987), citing *Thomas* at 232, 400 N.E.2d 401. In *Blevins,* this court set forth the test for the admissibility of such testimony: "[t]he conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * * Additionally, such statements must meet the standard of Evid.R. 403(A)." *Id*. A trial court must exercise caution when determining the admissibility of an out-of-court declarant's statements to

explain a police officer's conduct because "the potential for abuse in admitting such statements is great." *Id*. Further, " 'when the statements connect the accused with the crime charged, they should generally be excluded.' " *Blanton* at ¶ 39, quoting *State v. Humphrey,* 10th Dist. No. 07AP–837, 2008-Ohio-6302, 2008 WL 5104775, ¶ 11.

"[W]hen an officer relates out-of-court statements that establish the elements of the crime charged, the statements may exceed that which is needed to establish a foundation for the officer's subsequent conduct." *Willis* at ¶ 12, citing *State v. Gresh*, 5th Dist. No. 09–CAA–012–0102, 2010-Ohio-5814, 2010 WL 4884218, ¶ 31. In *Gresh,* a police officer testified to the victim's statements that the defendant touched her inappropriately. The trial court admitted the testimony on the ground it was not offered for the truth of the matter asserted, but to explain the officer's investigative steps. On appeal, the court determined the testimony was improperly admitted because the officer's statements went beyond what was necessary to establish a foundation for the officer's subsequent conduct and the statements established the elements of the crime for which the defendant was charged. *Id*.

In the present case, Officer Brafford's narration was not limited to a brief explanation of the basis for police involvement. Indeed, why Officer Brafford proceeded as he did had very little, if any, relevance or real importance in this case. Officer Brafford's testimony had real meaning and impact only if it was offered to prove the truth of what it asserts, which is that appellant sexually assaulted K.S. To that end, Officer Brafford's testimony clearly demonstrated the elements of the crimes with which appellant was charged. Indeed, Officer Brafford testified that K.S. reported to him that appellant touched her breast and buttocks. Accordingly, we disagree with the state's assertion that Officer Brafford's testimony was not hearsay. The state does not alternatively contend that even if Officer Brafford's testimony did constitute hearsay, it was admissible under one of the exceptions set forth in Evid.R. 803.

Our conclusion that Officer Brafford's hearsay testimony was improperly admitted does not end our inquiry. This court has stated that " 'hearsay is generally inadmissible because the declarant is not testifying in court and the factfinder is unable to observe the declarant and decide whether the declarant's statement is worthy of belief.' " *State v. Bartolomeo*, 10th Dist. No. 08AP–969, 2009-Ohio-3086, 2009 WL 1819507, ¶ 17, quoting *State v. Warren*, 8th Dist. No. 83823, 2004-Ohio-5599, 2004 WL 2365906, ¶ 44. In

addition, "[t]he admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements." *State v. Smith*, 2d Dist. No. 20828, 2006-Ohio-45, 2006 WL 38269, ¶ 16, citing *State v. Allen*, 2d Dist. No. 1390, 1996 WL 280745 (May 24, 1996). *See also State v. Hubbard*, 12th Dist. No. CA2006–09–216, 2007-Ohio-6029, 2007 WL 3348274, ¶ 14 (police detective's recitation of victim's statements to police did not prejudicially bolster victim's credibility because victim testified at trial and victim and detective were subject to cross-examination); *Gresh* (finding admission of police officer's hearsay testimony relating child victim's statement that defendant sexually abused her harmless because the victim testified at trial as to how and where the defendant touched her). Here, K.S. (the declarant) testified at trial, and her testimony, which during direct examination was to the same effect as Officer Brafford's testimony, was subject to cross-examination. *See Bartolomeo* at ¶ 17. Accordingly, any error in the admission of Officer Brafford's hearsay testimony was harmless.

Lastly, we consider A.R.'s testimony describing what K.S. told her about appellant's sexual misconduct. Again, appellant raised only a general hearsay objection to the testimony, and the trial court overruled the objection without explanation.

The state does not dispute A.R.'s testimony was hearsay. However, the state argues the testimony was admissible under the excited utterance exception to the hearsay rule. We agree. As noted above, the excited utterance exception permits the admission of hearsay testimony if the declarant's statement relates to a startling event and is made under the stress of that event. Immediately after A.R. entered her bedroom, which was within moments of appellant leaving the room, K.S. told her appellant had touched her breast and buttocks. K.S.'s statement to A.R. qualified as an excited utterance because it related to the startling event of appellant's sexual misconduct and was made under the stress of that event. Accordingly, the trial court did not err in admitting A.R.'s testimony.

Appellant contends for the first time on appeal the admission of K.S.'s statements through the above noted testimony violated his Sixth Amendment right to confront the witnesses against him. In *Jordan*, this court addressed a Sixth Amendment claim similar to that presented here. There, a social worker interviewed a child victim of sexual abuse as part of the intake process at a hospital. At trial, the social worker recounted the child's description of the

16

abuse. On appeal, the defendant argued for the first time the admission of the child's out-of-court statements through the social worker's testimony violated his Sixth Amendment right to confront the witnesses against him. This court found no plain error in the admission of the testimony. We explained, at ¶ 23–25:

Under *Crawford v. Washington* (2004), 541 U.S. 36 [124 S.Ct. 1354, 158 L.Ed.2d 177], regardless of its admissibility under the rules of evidence, a testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted may only be admitted when the declarant is unavailable and where the accused has a prior opportunity to cross-examine the witness.

*Crawford* further states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 [124 S.Ct. 1354], fn. 9, citing *California v. Green* (1970), 399 U.S. 149, 162 [90 S.Ct. 1930, 26 L.Ed.2d 489].

Although [defendant] ultimately chose not to fully cross-examine [the child] at trial on the subject of these prior, out-of-court statements to [the social worker], she did testify, and [defendant] had the opportunity for effective cross-examination. Because the Confrontation Clause guarantees only an opportunity for cross-examination, the fact that a defendant has chosen not to avail himself of the opportunity does not violate the Confrontation Clause. *United States v. Owens* (1988), 484 U.S. 554, 559 [108 S.Ct. 838, 98 L.Ed.2d 951].

(Emphasis sic.)

As in *Jordan*, K.S. (the declarant) testified at trial and appellant was provided the opportunity to cross-examine her on the subject of her prior statements to D.S., Officer Brafford, and A.R. Accordingly, we conclude appellant's Sixth Amendment right to confront witnesses against him at trial was not violated under the *Crawford* standard because appellant had a full opportunity to cross-examine the declarant who testified at trial. *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. *Jordan* at ¶ 25. *See also L.E.F.* at ¶ 11 ("because [the declarant] testified at trial and was subject to cross-examination, we are not presented with a Confrontation Clause issue"); *State v. McKinney*, 10th Dist. No. 13AP–211, 2013-Ohio-5394, 2013 WL 6506596, ¶ 21. Appellant's first assignment of error is overruled.

In his second assignment of error, appellant contends the trial court erred in permitting the prosecutor to elicit victim impact evidence at trial. Appellant specifically asserts the trial court erred in allowing D.S. to testify about the "psychological harm" appellant's conduct caused K.S. and her family. (Appellant's Brief, 14.)

When the prosecutor asked D.S. what impact the April 13, 2013 incident had on her family, D.S. responded, "[a] lot of conversations that I have had to have with my children." (Tr. Vol. II, 77.) Appellant objected "to this line of questioning" on relevancy grounds. (Tr. Vol. II, 77.) The trial court summarily overruled the objection, and D.S. continued her testimony, stating, "there has been a lot of tears, not apprehension, a lot of uneasiness in the neighborhood. * * * We've had to have conversations with my son about why we are careful[.] * * * I had to have the same conversation with him from having spent the night down there before." (Tr. Vol. II, 7778.) Appellant lodged the "[s]ame objection," which the trial court again summarily overruled. (Tr. Vol. II, 78.)

Appellant maintains the challenged testimony was irrelevant and prejudicial in that it "offered a narrative of lost innocence and a neighborhood and friendship's [sic] shattered without any concern as to whether those results were relevant to [appellant's] guilt" and was "only designed to foster sympathy for K.S.'s family." (Appellant's Brief, 1516.) The state argues the testimony was relevant to prove the offenses occurred and to corroborate K.S.'s testimony.

Generally, any evidence having the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is admissible. See Evid.R. 401. However, testimony as to the effect a defendant's criminal acts have on the victim, the victim's family, or both, is usually irrelevant because it does not ordinarily involve the guilt or innocence of the accused. *State v. Wade*, 8th Dist. No. 90145, 2008-Ohio-4870, 2008 WL 4358375, ¶ 17. "Rather than proving any fact of consequence on the issue of guilt, victim impact testimony tends to inflame the passions of the jury and risk conviction on facts unrelated to actual guilt." *Id.*, citing *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968). However, "[v]ictim-impact evidence is admissible in certain circumstances, such as when the evidence relates to both the facts attendant to the offense and the effect on the victim." *State v. Rucker*, 2d Dist. No. 24340, 2012-Ohio-4860, 2012 WL 5076193,

¶ 34, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 138.

In the present case, the prosecutor's question regarding the effect appellant's conduct had on K.S. and her family was not relevant to appellant's guilt or innocence, and the only apparent purpose for the question was to elicit sympathy from the jury. The trial court thus erred in admitting the testimony. However, we find the admission of this evidence amounted to harmless error. Where there is no reasonable possibility the challenged testimony contributed to a conviction, the error is harmless and thus does not constitute grounds for reversal. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 62.

The prosecutor did not dwell on the impact of the crimes on K.S. and her family, either during questioning or in closing argument. *See Rucker* at ¶ 34. In addition, appellant raises no challenge to either the weight or sufficiency of the evidence. *See Wade* at ¶ 20. K.S. testified in detail regarding the sexual abuse, and the persons to whom she reported the abuse offered testimony consistent with that of K.S. In addition, during his interviews with the police and at trial, appellant ultimately conceded he was in A.R.'s bedroom with K.S., that if he touched K.S.'s breast when he hugged her, it was accidental, and that he may have accidentally touched her buttocks while ushering her into A.R.'s bedroom. After assessing the evidence presented by both parties at trial, including the credibility of all witnesses, including appellant, the jury found appellant guilty of two counts of gross sexual imposition.

Contrary to appellant's assertion, the victim impact testimony in this case was not similar to that admitted in *State v. Ponce*, 10th Dist. No. 95APA11–1450, 1996 WL 589267 (Oct. 10, 1996), and *State v. Presley*, 10th Dist. No. 02AP–1354, 2003-Ohio-6069, 2003 WL 22681425. In *Ponce*, a rape victim testified she sought psychological counseling for emotional problems and nightmares stemming from the rape. In *Presley*, a rape victim testified she had nightmares about the rape and both the victim and her mother testified the victim attempted suicide as a result of the rape. In both cases, this court concluded the improper admission of the testimony prejudiced the defendant. Here, D.S. did not testify she K.S. sought psychological counseling or attempted suicide as the result of appellant's conduct. In fact, D.S. offered no specifics about the impact of appellant's conduct on K.S. Rather, D.S. offered only general testimony about "tears" and "uneasiness in the neighborhood" and that she had to talk about the incident with her son. Given the overall context of the trial, there is no reasonable

> possibility that the limited victim impact testimony contributed to appellant's conviction. The second assignment of error is overruled.

*State v. F.R.*, 34 N.E.3d 498, 505–12 (Ohio Ct. App. 2015) (paragraph symbols omitted).

To the extent that Petitioner here asserts an alleged violation of state law or state evidentiary rules, that assertion alone fails to provide a basis for federal habeas corpus relief. 28 U.S.C. § 2254(a). As a general matter, errors of state law, especially the improper admission of evidence, do not support a writ of habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). Instead, to be entitled to habeas relief, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)).

The Sixth Circuit has explained the high standard a petitioner must meet in a case like this:

> Any review of habeas due process claims based on improper admission of evidence must be cognizant of the Supreme Court's mandate that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Under this very deferential standard, due process is violated and thus habeas relief warranted, only if an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512 (6th Cir. 2003). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical, highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

These principles have their roots in the Supreme Court decision of *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), which held that trial errors cannot "defeat the ends of justice" or otherwise deprive a defendant of her right to a fair trial. In *Chambers*, the Court was looking at a state trial court's improper exclusion of certain evidence that would potentially have assisted the defendant, but [its] tenets are equally applicable to situations involving a state trial court's improper admission of certain evidence injurious to the defendant. The ultimate question is therefore whether the state habeas court, in finding that admission of [the] testimony was not prejudicial to the ultimate outcome of Petitioner's case, unreasonably applied *Chambers*.

*Ege v. Yukins*, 485 F.3d 364, 375–76 (6th Cir. 2007) (footnote omitted).

Petitioner cannot meet that high bar here. The state appellate court found that D.S.'s and A.R.'s testimonies regarding K.S.'s out-of-court statements were admissible under the excited utterance exception to the hearsay rule pursuant to Rule 803(2) of the Ohio Rules of Evidence. *F.R.*, 34 N.E.3d at 506–07; *id.* at 509–10. As for Officer Bradford's testimony, the state appellate court determined that his testimony regarding K.S's out-of-court statements was inadmissible hearsay but concluded that the error was harmless because K.S. was subject to cross-examination. *Id.* at 508–09.

Having reviewed the trial transcript in this matter, the Court concludes that none of these state-court rulings resulted in a denial of fundamental fairness, and the Court therefore rejects Petitioner's argument on these claims. *See Giles*, 449 F.3d at 704 (holding that a state court evidentiary ruling does not violate due process unless it "'offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" and, as such, Petitioner's due process rights were not violated) (quoting *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)).

Also, to the extent Petitioner brings a Confrontation Clause claim related to the above testimony, this claim likewise fails. Citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2008), the state appellate court concluded that because the declarant (K.S.) testified at trial and was

21

subject to cross-examination, Petitioner's Sixth Amendment rights were not violated. *F.R.*, 34 N.E.3d at 510–11. In *Crawford*, the Supreme Court noted:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green,* 399 U.S. 149. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

541 U.S. at 59 n.9; *see also Whittaker v. Lafler*, 639 F. Supp.2d 818, 827 (E.D. Mich. 2009) (finding no Confrontation Clause violation "when the declarant testifies as a witness at trial and is subject to full and effective cross-examination concerning the prior statements") (citing *California v. Green*, 399 U.S. at 158); *Thomas v. Brunsman*, No. 1:07-cv-858, 2008 WL 8065691, at *11 (S.D. Ohio Nov. 5, 2008) (citing *Crawford*, 541 U.S. at 59 n.9; *United States v. Kappall*, 418 F.3d 550, 554 (6th Cir. 2005) (finding no Confrontation Clause violation where psychotherapist and pediatricians testified about what sexually abused children told them because children testified at trial and were subject to cross-examination); *United States v. Owens*, 484 U.S. 554, 560 (1988) (where a hearsay declarant is present at trial and subject to unrestricted cross-examination, the "traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the Sixth Amendment). Because K.S. testified at trial and was subject to cross-examination, Petitioner cannot establish a Confrontation Clause violation based on the admission of her statements by other prosecution witnesses. The state court correctly applied this law, and Petitioner cannot satisfy AEDPA's standards.

## 2. Cumulative Error

Petitioner also asserts that that he was denied a fair trial based on cumulative error. Such a claim, however, does not support a grant of federal habeas corpus relief. "[P]ost-AEDPA, not

even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002)). This Court is bound by that rule and thus cannot grant Petitioner relief on such a claim.

### 3. Manifest Weight and Sufficiency of the Evidence

Respondent additionally argues that Petitioner's claim regarding sufficiency of the evidence and manifest weight of the evidence is procedurally defaulted. In recognition of the federal and state courts' equal obligation to protect criminal defendants' constitutional rights and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. *See* 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, however, the petitioner no longer may present the relevant claims to a state court because of a procedural default, a federal court may not review the claim unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second,

the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id*. "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him [, *i.e.*,] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level and to the failure to appeal at all. *Id*. at 750.

However, "'[i]n appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)). Petitioners who have not established cause and prejudice sufficient to excuse a procedural default may nonetheless obtain review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Lott v. Coyle*, 261 F.3d 594, 601–02 (6th Cir. 2001). The fundamental miscarriage of justice exception requires a showing that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Here, Petitioner did not present his claim that his convictions were against the manifest weight of the evidence[1] or that the evidence was constitutionally insufficient to sustain his convictions to any state court.  Moreover, Ohio's doctrine of *res judicata* now bars his ability to raise such claims in the state courts.  *See State v. Perry*, 226 N.E.2d 104 (1967) (holding that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.); *see also State v. Cole*, 443 N.E.2d 169 (1982); *State v. Ishmail*, 423 N.E.2d 1068 (1981).  Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims.  *See State v. Cole*, 443 N.E.2d at 170–71; *State v. Ishmail*, 423 N.E.2d at 1070.  The Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law.  Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may, however, still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

---

[1] Moreover, a claim that a conviction is against the manifest weight of the evidence is not cognizable on federal habeas review.  *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n. 4 (6th Cir. 2007).

> " '[C]ause' under the cause and prejudice test must be something
> external to the petitioner, something that cannot fairly be attributed
> to him[;]...some objective factor external to the defense [that]
> impeded...efforts to comply with the State's procedural rule."
> *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has not argued, and the record
does not reflect, that his procedural default can be excused by any explanation that would be
sufficient under *Murray v. Carrier*. His claims are therefore defaulted.

Petitioner maintains that he is actually innocent of the charges against him. However,
independent review of the record fails to establish that Petitioner is actually innocent or the
victim of a manifest miscarriage of justice. He presents no new reliable evidence establishing his
factual innocence of the charges against him. Further, the record does not indicate that this case
is of the rare or extraordinary type justifying a merits review of his otherwise procedurally
defaulted claims. *See Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005) (footnote and citations
omitted); *see also McQuiggin v. Perkins*, -- U.S. --, 133 S. Ct. 1924, 1931–32 (2013).

## CONCLUSION

Petitioner's motion to strike the Motion to Dismiss is **DENIED.** Therefore, the
Magistrate Judge **RECOMMENDS** that Respondent's Motion to Dismiss (Doc. 8) be
**GRANTED**, and that this action be **DISMISSED.**

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen
days of the date of this Report, file and serve on all parties written objections to those specific
proposed findings or recommendations to which objection is made, together with supporting
authority for the objection(s). A judge of this Court shall make a de novo determination of those
portions of the report or specified proposed findings or recommendations to which objection is

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: January 23, 2017                    /s/ Kimberly A. Jolson
                                          Kimberly A. Jolson
                                          United States Magistrate Judge